# CIRCUIT COURT OF LOUDOUN COUNTY

Grenata Homeowners
Association *et al.*

    v.

Loudoun County
Board of Supervisors
and EVG Land, L.L.C.

April 22, 2016

Case Nos. CL 95286, CL 95288, and CL 95290

By Judge Douglas L. Fleming, Jr.

This matter came before the Court upon the pleas in bar of respondents Board of Supervisors of Loudoun County and EVG Land, L.L.C.

*Relevant Facts and Procedural History*

On July 23, 2015, Grenata Homeowners Association ("Grenata") and Steve and Debbie Ikirt, Paul Norton and Kim Norton, and Rahul Sharma and Eva Malhotra (collectively "Landowners") filed their petitions for writ of certiorari to review a decision of the Board of Zoning Appeals ("BZA") dated June 23, 2015.

The property at issue, the Evergreen Sportsplex ("Sportsplex" or "Property"), consists of, among other things, athletic fields with accessory lighting for outdoor games and sports. The Grenata community consists

of large homes on three to six acre lots, and is located adjacent to the Sportsplex.

After lighting was installed on the athletic fields at the Sportsplex, the Landowners and Grenata requested that the zoning administrator determine whether the lights violated the light and glare standards set forth in § 5-1504 of the Loudoun County Zoning Ordinance.

On May 22, 2014, the Loudoun County ("County") zoning enforcement inspector issued a notice of violation to Defendant EVG Land, L.L.C. ("EVG"), owner of the Property/Sportsplex. The notice of violation asserted that the direct glare of some of the lighting on the Property was visible beyond the property line in violation of § 5-1504(A)-(C) of the Zoning Ordinance. EVG appealed that notice of violation.

On October 31, 2014, Grenata requested that the zoning administrator determine, among other things, whether the lighting on the Property met the lighting and glare standards under the Zoning Ordinance.

On December 16, 2014, the County zoning enforcement inspector determined that the lights were in compliance with § 5-1504 of the Ordinance. EVG withdrew its appeal of the notice of violation.

On January 15, 2015, Grenata appealed the December 16, 2014, zoning determination ("APPL-2015-0001").

On February 13, 2015, the County zoning administrator responded to Grenata's October 31, 2014, zoning request for determination.

On March 13, 2015, Grenata filed an appeal to the BZA of the February 13, 2015, zoning determination ("APPL-2015-0004"). This appeal subsequently was withdrawn.

The BZA noticed a hearing for June 23, 2015, on Grenata's January 15, 2015, application for appeal. After the hearing, the BZA voted, by a vote of two to one, to uphold the December 16, 2014, zoning determination and deny APPL-2015-0001.

Grenata and the Landowners contend the BZA's decision to deny APPL-2015-0001 is erroneous because: (1) the BZA applied erroneous principles of law; (2) the BZA's decision is plainly wrong and not supported by the evidence; and (3) the decision of the BZA ignores the plain language of and violates the purpose and intent of the Ordinance.

## I. *Plea in Bar of Respondent Board of Supervisors of Loudoun County*

The Board of Supervisors ("BOS") first argues that Grenata is not a "person aggrieved" under Virginia Code §§ 15.2-2311(A) or 15.2-2314, and does not otherwise have standing to appeal either the December 16, 2014, zoning determination or the BZA's decision on the appeal. The BOS cites to the case of *Virginia Beach Beautification Comm'n v. Board of Zoning Appeals,* 231 Va. 415, 419-20, 344 S.E.2d 899 (1986), where the Supreme Court of Virginia set forth the meaning of "aggrieved":

In order for a petitioner to be "aggrieved," it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he seeks to attack. The petitioner "must show that he has an immediate, pecuniary, and substantial interest in the litigation, and not a remote or indirect interest" Thus, it is not sufficient that the sole interest of the petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong he has suffered is in common with other persons similarly situated. The word "aggrieved" in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

The BOS sets forth the two-part test to determine whether a party who claims no ownership interest in the subject property has standing to challenge a land use decision, as articulated in *Friends of the Rappahannock v. Board of Supervisors*, 286 Va. 38, 48-49, 743 S.E.2d 132 (2013):

First, the complainant must own or occupy real property within or in close proximity to the property that is the subject of the land use determination, thus establishing that it has a direct, immediate, pecuniary, and substantial interest in the decision.

Second, the complainant must allege facts demonstrating a particularized harm to some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

The BOS asserts Grenata fails to establish that it has a "direct, immediate, pecuniary, and substantial interest" in the decision of the BZA. Although Grenata owns three parcels of real estate within Grenata, the BOS contends none of these parcels abut or border the Sportsplex. The BOS states one parcel is an open space lot used for water supply for the community, and the other two lots are "outlots" under the Zoning Ordinance, and thus, no habitable structure may be built upon those two outlots. The BOS argues the three parcels cannot be developed and thus have no monetary value, The BOS contends that, because these parcels have no monetary value and do not abut the Sportsplex, Grenata cannot have a "direct, immediate, pecuniary, and substantial interest" in the decision of the BZA.

Additionally, the BOS argues Grenata fails to allege facts demonstrating a particularized harm to, or imposition of a burden or obligation upon Grenata that is different from that suffered by the public generally. Although Grenata alleges the value of its parcels is diminished by the adverse effects

of the lighting at the Sportsplex, the BOS argues the parcels cannot have monetary value that could be diminished because the parcels are vacant, and cannot be developed. The BOS argues that the harm allegedly suffered by Grenata from the adverse effects of the lights is no different from the harm suffered by the public generally, and thus, Grenata cannot be a "person aggrieved" under Virginia Code §§ 15.2-2311(A) or 15.2-2314.

Next, the BOS contends that Virginia law does not permit Grenata to be "aggrieved" in a representative capacity for the purpose of an appeal to the BZA of a decision of the zoning administrator.

The BOS acknowledges that Grenata's Board of Directors authorized Grenata to file the appeal application on behalf of its members. However, the BOS argues this authorization does not create standing to sue in a representative capacity. The BOS contends "[a]n individual or entity does not acquire standing to sue in a representative capacity by asserting the rights of another, unless authorized by statute to do so." *W. S. Carnes, Inc. v. Chesterfield Cnty.*, 252 Va. 377, 383, 478 S.E.2d 295 (1996). The BOS further argues that the Property Owners' Association Act, Virginia Code § 55-508, *et seq.* does not authorize Grenata, as a HOA, to take an appeal to the BZA of a decision of the zoning administrator in the representative capacity of any of its members. Rather, the Property Owner's Association Act only permits Grenata to initiate suits involving enforcement of its rules and compliance with its declaration. The BOS contends the appeal application received by the zoning administrator from Grenata "cannot be considered to have been an application for appeal from the members of Grenata in either their individual or collective capacities." (*See* Memorandum of Law in Support of Plea in Bar at p. 6.)

Next, the BOS asserts that the zoning administrator never received an application for appeal from the Landowners. The BOS further asserts that because more than thirty days have passed since the decision of the zoning administrator, the Landowners cannot now appeal to the BZA. The BOS contends that, because no timely appeal of the December 16, 2014, zoning determination was made to the BZA by a party with standing to do so, the December 16, 2014, letter was thereby rendered a "thing decided" and is not subject to judicial attack or challenge.

The BOS argues that the Landowners were added as parties to the petition in recognition of Grenata's deficiencies. However, the BOS argues that the addition of the Landowners as new parties to the petition cannot be used to address the lack of any timely and proper appeal of the December 16, 2014, letter to the BZA. The BOS asserts that, if the Landowners believed they had been aggrieved by the December 16, 2014, zoning determination, then the Landowners were required under Virginia Code § 15.2-2311(A) to have first made a timely and proper appeal to the BZA. Since Landowners did not file an appeal to the BZA, the BOS argues the Landowners failed

to exhaust their administrative remedies and cannot now use the current proceedings as a means of making an untimely appeal.

## II. *Petitioners' Opposition*

Grenata argues it has standing, in its individual capacity, as an aggrieved owner of three lots within the community, and as a duly authorized agent of the homeowners of Grenata, to challenge the determination of both the zoning administrator and the BZA. Petitioners contend that, at this stage, the Court is required to accept as true all material allegations in the petition and to construe the allegations in the petitioners' favor. Petitioners further contend the Court should, if appropriate, allow amendment or other additional support of standing. Then, if standing is not supported by any materials in the record, dismissal for lack of standing would be proper.

Petitioners contend Grenata has properly alleged that it has standing both as an aggrieved property owner and as a duly authorized representative of its members. If a factual dispute exists regarding Grenata's status as an aggrieved party, the petitioners contend that the Court must resolve the dispute in favor of Grenata.

Specifically, petitioners assert that the lots owned by Grenata are located "within the zone of potential harm," Petitioners argue immediately adjacent property is not required under *Friends of the Rappahannock*, and that close proximity to the property subject to the land use determination is all that is required. Petitioners state the three parcels owned by Grenata are located approximately 488, 1283, and 2770 feet from the Sportsplex, respectively. Petitioners argue the requirement of proximity to the property is clearly satisfied.

Next, petitioners contend the harms alleged by Grenata are harms that only property owners in very close proximity to the Sportsplex can suffer, and are not shared by the general public.

Petitioners also assert that Grenata was expressly authorized by its members to act on their behalf and thus Grenata had standing to file the appeal and the instant action as the authorized agent of its principals. Grenata states its covenants give it the power to employ counsel and institute such suits as the HOA deems necessary. Grenata further states it was authorized by a resolution duly adopted by its Board of Directors to file the appeal on behalf of itself and the property owners in Grenata who were aggrieved by the decision of the zoning administrator. Petitioners cite the case of *Braddock, L.C. v. Board of Supervisors*, 268 Va. 420, 425, 601 S.E.2d 552 (2004), for the proposition that, in determining standing, "an agent may not sue in his principal's behalf without express authority from the principal, *or* unless authorized by statute to do so." (Emphasis added.) Petitioners argue Grenata clearly acted with authority, the resolution of the board of directors, in pursuing the appeal and the instant action.

Petitioners argue that Virginia Code § 15.2-2314 does not require a party to appeal a zoning administrator's determination prior to filing a petition for writ of certiorari for review of a BZA ruling, and thus this petition is not barred by the doctrine requiring exhaustion of administrative remedies. Petitioners argue there is no requirement in Virginia Code § 15.2-2314 that an aggrieved person must have participated in the appeal of the zoning administrator's decision to the BZA in order to thereafter seek review of a BZA decision. Petitioners contend the December 16, 2014, letter from the zoning administrator is not a "thing decided," as the Landowners timely filed their petition, and have fully complied with all requirements under Virginia Code § 15.2-2314 to seek review of the BZA ruling.

### III. *Plea in Bar of Respondent EVG Land, L.L.C.*

EVG first argues that the Landowners lack standing because they did not appeal to the BZA. Rather, the application for appeal (APPL 2015-0001) of the December 16, 2014, zoning determination was filed solely by Grenata. EVG argues the Landowners failed to exhaust administrative remedies because they failed to file an appeal within the thirty-day period proscribed by Virginia Code § 15.2-2311(A). EVG cites to *Lilly v. Caroline County*, 259 Va. 291, 296, 526 S.E.2d 743 (2000), where the Supreme Court of Virginia stated: "If this mandatory appeal is not timely filed, the administrative remedy has not been exhausted and the zoning administrator's decision becomes a 'thing decided' not subject to court challenge." *Id.* EVG argues that, although some of the Landowners provided affidavits in support of the Application for Appeal, this does not relieve the Landowners of their statutory obligation to exhaust administrative remedies.

Next, EVG argues Grenata lacks standing because it is not aggrieved. EVG contends that, for Grenata to establish standing, the three parcels owned by Grenata must be in close proximity to the Property, and Grenata must "allege facts demonstrating a particularized harm . . . different from that suffered by the public generally." *See Friends of the Rappahannock*, 286 Va. at 48-49, 743 S.E.2d 132. EVG contends Grenata cannot satisfy either of these two elements.

EVG asserts Grenata owns three vacant, unbuildable lots with no monetary value, and that these lots do not abut or border the Property. EVG contends Grenata's "interest in the outcome of this case is, by definition, remote, indirect, insubstantial, and non-monetary." EVG asserts Grenata cannot demonstrate a substantial, pecuniary interest in the outcome of this case.

EVG further argues Grenata fails to allege it suffered "a particularized harm to some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally." *Id.* at 48. Rather, EVG argues the harms alleged by Grenata are shared by members of the general public. EVG asserts alleged

harm suffered by the public generally cannot establish a party's standing, and thus Grenata's petition should be dismissed with prejudice.

EVG next argues that Grenata lacks authority to appeal the BZA's determination on behalf of the Landowners. Although Grenata asserts the Covenants and Bylaws of Grenata authorize Grenata to pursue the appeal, EVG contends that, under Virginia law, "[a]n individual or entity does not acquire standing to sue in a representative capacity by asserting the rights of another, unless authorized by statute to do so." *W. S. Carnes, Inc.,* 252 Va. at 383, 478 S.E.2d 295. EVG argues that, if no statutory authorization exists, there can be no representational standing.

EVG further argues that neither the Property Owners Association Act, Virginia Code §§ 55-508 *et seq.,* nor Grenata's Declaration of Covenants, Conditions, and Restrictions permits Grenata to file any sort of action on behalf of the Landowners in a representative capacity.

Finally, EVG argues that Grenata is barred from challenging the BZA's decision because it withdrew, with prejudice, a different application for appeal (APPL 2015-0004), which related to the same issues that are before the Court in this proceeding. EVG contends counsel for Grenata agreed, under oath before the BZA, that the matters underlying the withdrawn appeal were no longer subject to challenge. EVG argues this is "tantamount to a failure to file a timely appeal in the first place." EVG asserts the failure of a party to timely file an appeal results in the relevant decision becoming a "thing decided not subject to court challenge." *Lilly,* 259 Va. at 296, 526 S.E.2d 743. EVG asserts that Grenata is "estopped and/or barred from challenging the issue of EVG's compliance with the light and glare standards" as a result of withdrawing its appeal.

## IV. *Petitioner's Opposition*

In response to EVG's plea in bar, Petitioners argue that the Landowners were not required to participate in the appeal to the BZA prior to filing a petition for writ of certiorari for review of the BZA ruling; consequently, the Landowners' petition is not barred by the doctrine requiring exhaustion of administrative remedies. Petitioners argue there is no requirement in Virginia Code § 15.2-2314 that "an aggrieved person must have participated in the appeal of the zoning administrator's decision to the BZA in order to seek review of a BZA decision." Petitioners further argue the December 16, 2014, zoning determination from the zoning administrator is not a "thing decided" since the Landowners timely filed their Petition and fully complied with all requirements under Virginia Code § 15.2-2314 to seek review of the BZA ruling.

Petitioners note that EVG fails to cite any authority in support of its argument that a party's failure to appeal the ruling of a zoning administrator prevents that party from seeking review of a subsequent BZA decision.

Petitioners argue that they have standing, in their individual capacities, as an aggrieved owner of three lots within the community and as a duly authorized agent of the homeowners of Grenata, to challenge the determination of both the zoning administrator and the BZA. Petitioners contend that, at this stage, the Court is required to accept as true all material allegations in the petition and to construe the allegations in petitioners' favor. Petitioners further contend the Court should, if appropriate, allow amendment or other additional support of standing; then, if standing is not supported by any materials in the record, dismissal for lack of standing would be proper.

Petitioners contend Grenata has properly alleged that it has standing both as an aggrieved property owner and as a duly authorized representative of its members. If a factual dispute exists regarding Grenata's status as an aggrieved party, petitioners contend the Court must resolve the dispute in favor of Grenata.

Specifically, petitioners assert the lots owned by Grenata are located "within the zone of potential harm." Petitioners argue immediately adjacent property is not a prerequisite for standing under *Friends of the Rappahannock* and that close proximity to the property subject to the land use determination is all that is required. Petitioners state the three parcels owned by Grenata are located approximately 488, 1,283, and 2,770 feet from the Sportsplex, respectively. As such, petitioners argue, the requirement of proximity to the property is clearly satisfied.

Next, Petitioners contend the harms alleged by Grenata, are harms that only property owners in very close proximity to the Sportsplex can suffer, and are not shared by the general public. Petitioners argue "[i]t strains reason to suggest, as EVG has, that, because the harms alleged by the Association are shared by other property owners within the same 61 lot subdivision, including the three HOA parcels in which the Association's property is located, that the allegations of harm are 'plainly shared by members of the general public.'" Petitioners cite the case of *McGhee v. Board of Zoning Appeals*, 57 Va. Cir. 47, 49 (Roanoke City 2001), where the Roanoke Circuit Court held that petitioners who own property and live and work in the neighborhood where condominiums were being built were aggrieved persons and that "[t]hough they may share this burden with some South Roanoke neighbors, it is not one suffered by the public generally." Petitioners further assert that the harms alleged by Grenata, *i.e.*, an actual trespass on Grenata's properties caused by excessive light and glare emitted by the Sportsplex field lighting, are harms that only property owners in very close proximity to the Sportsplex can suffer, and are not shared by the general public.

Petitioners reiterate their position that any questions of fact that exists at this stage must be resolved in favor of the petitioners.

Petitioners next argue that Grenata was expressly authorized by its members to act on their behalf and thus, had standing to file the appeal and the instant action as the authorized agent of its principal. Grenata states its covenants give it the power to employ counsel and institute such suits as the HOA deems necessary. Grenata further states it was authorized by a resolution duly adopted by its board of directors to file the appeal on behalf of itself and the property owners in Grenata who were aggrieved by the decision of the zoning administrator. As stated earlier, petitioners point to the case of *Braddock, L.C.,* 268 Va. at 425, 601 S.E.2d 552, for the proposition that, in determining standing of an aggrieved party, "an agent may not sue in his principal's behalf without express authority from the principal, *or* unless authorized by statute to do so." Petitioners argue Grenata clearly acted with authority, the resolution of the board of directors, in pursuing the appeal and the instant action.

Finally, petitioners assert that Grenata's withdrawal of the Application for Appeal 2015-0004 has no impact upon its Application for Appeal 2015-0001. Grenata contends, when it withdrew Appeal 2015-0004, it was withdrawing only its appeal of the zoning administrator's determination of February 13, 2015. Counsel for Grenata denies stating the matters underlying the withdrawn appeal were no longer subject to challenge.

*Analysis*

The standards of review for a defensive plea in bar and a demurrer are substantially similar. *Sullivan v. Jones,* 42 Va. App. 794, 802, 595 S.E.2d 36 (2004). A plea in bar, however, reduces the litigation to a single issue; it presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. *Station # 2 v. Lynch,* 280 Va. 166, 695 S.E.2d 537 (2010); *Cooper Indus., Inc. v. Melendez,* 260 Va. 578, 594, 537 S.E.2d 580 (2000). The burden of proof on the dispositive fact rests on the moving party. *Lynch,* 280 Va. 166; *Tomlin v. McKenzie,* 251 Va. 478, 480, 468 S.E.2d 882 (1996).

In cases where the circuit court takes no evidence on a plea in bar, the plaintiff's allegations are accepted as true for purposes of ruling on the plea. *Lynch,* 280 Va. 166; *see Gray v. Virginia Sec'y of Transp.,* 276 Va 93, 97, 662 S.E.2d 66 (2008).

In most cases involving pleas in bar, no evidence has been received before the plea is scheduled for argument. As noted above, the Court can take evidence as part of the hearing on the plea in bar. This case involves an appeal of a board of zoning appeals' decision and, as such, a considerable amount of evidence, in the form of the BZA record, already has been received. Pursuant to Virginia Code § 15.2-2314, "[a]ny person or persons jointly or severally aggrieved by any decision of the board of zoning appeals or any aggrieved taxpayer or any officer, department, board, or bureau of the locality, may file with the clerk of the circuit court for the county or city

a petition . . . specifying the grounds on which aggrieved within 30 days after the final decision of the board."

This section further provides, in pertinent part:

> The court may reserve or affirm, wholly or partly, or may modify the decision brought up for review. In the case of an appeal from the board of zoning appeals to the circuit court of an order, requirement, decision, or determination of a zoning administrator or other administrative officer in the administration of enforcement of any ordinance or provision of state law . . . *the finding and conclusion of the board of zoning appeals on question of facts shall be presumed to be correct.* The appealing party may rebut that presumption by proving by a preponderance of the evidence, including the record before the board of zoning appeals, that the board of zoning appeals erred in its decision. *Any party may introduce evidence in the proceedings in the court. The court shall hear any arguments on questions of law de novo.*

*Id.* (emphasis added).

The arguments of both the BOS and EVG are summarized as follows:

1. The Landowners do not have standing to bring this action because they failed to appeal to the BZA as required under Virginia Code § 15.2-2311;

2. Grenata lacks standing to bring this action because it fails to meet the two-part test articulated in *Friends of the Rappahannock*;

3. Grenata lacks authority to take legal action on behalf of the Landowners in a representative capacity; and

4. The determination that the lighting at the Sportsplex is in compliance with the applicable zoning ordinance is a "thing decided" not subject to court challenge.

I will address the arguments in the order set forth above.

## I. *Do the Landowners Have Standing To Bring This Action?*

The BOS and EVG both argue that the individual Landowners lack standing to bring this action because they did not appeal the December 16, 2014, zoning determination within thirty days, as required by Virginia Code § 15.2-2311(A). Having not appealed within thirty days, the respondents argue that the Landowners have not exhausted their administrative remedies and consequently are foreclosed from challenging the BZA's decision by petitioning for a writ of certiorari under Virginia Code § 15.2-2314.

### A. *Virginia Code § 15.2-2311*

Virginia Code § 15.2-2311(A), entitled "Appeals to board," states that:

> An appeal to the board may be taken by any person aggrieved . . . by any decision of the zoning administrator . . . . [A] written order of the zoning administrator . . . shall include a statement informing *the recipient that he may have a right to appeal the notice of a zoning violation or a written order within 30 days in accordance with this section and that the decision shall be final and unappealable if not appealed within 30 days. . . .* The appeal period shall not commence until the statement is given. A . . . written order of the zoning administrator that includes such statement sent by registered or certified mail to, or posted at, the last known address of the property owner . . . *shall be deemed sufficient notice* to the property owner and shall satisfy the notice requirements of this section. . . . A decision by the board on appeal taken pursuant to this section *shall be binding upon the owner of the property which is the subject of such appeal only if the owner of such property has been provided notice . . . .* The owner's actual notice of such notice of . . . written order or active participation in the appeal hearing shall waive the owner's right to challenge the validity of the board's decision due to failure of the owner to receive the notice . . . .

(Emphasis added.)

Virginia Code § 15.2-2311, by its plain language, clearly contemplates that the "recipient" of a zoning determination has thirty days from receiving notice within which to appeal the determination. The plain language of the statute makes it clear that the "notice" contemplated includes notice of both the zoning administrator's determination *and* the right of appeal.

The Supreme Court of Virginia first addressed the requirements of Virginia Code § 15.2-2311 in *Dick Kelly Enters. v. City of Norfolk*, 243 Va. 373, 416 S.E.2d 680 (1992). *Dick Kelly* involved a written decision that was directed to the landowner of the property subject to the decision. The landowner did not appeal the written decision to the BZA. The Court in *Dick Kelly* ruled that, having not appealed to the BZA, the landowner could not thereafter assert a vested right defense in an action to enjoin a zoning violation. The Court specifically ruled that the matter had become a "thing decided" when the landowner failed to pursue his administrative appeal pursuant to Virginia Code § 15.2-2311.

Eight years after deciding *Dick Kelly*, the Supreme Court of Virginia again took the opportunity to address the applicability of Virginia Code § 15.2-2311. *Lilly v. Caroline Cnty.*, 259 Va. 291, 526 S.E.2d 743 (2000), did not involve the rights of a landowner of property subject to an administrative determination; rather, the case involved owners "in the vicinity" of property subject to the determination. The nearby owners were present at a public meeting when the zoning administrator made an oral determination; the

zoning administrator added that his determination could be appealed to the board of zoning appeals. No one, including the owners in the vicinity of the subject property, appealed the zoning administrator's determination. Two months later, the nearby owners filed a declaratory judgment action challenging the zoning administrator's determination.

The trial court in *Lilly* dismissed the declaratory judgment action. The trial court cited *Dick Kelly* for the proposition that, if the mandatory appeal is not timely filed pursuant to Virginia Code § 15.2-2311, the administrative remedy has not been exhausted and the decision becomes a "thing decided" not subject to court challenge. In affirming the trial court, the Supreme Court of Virginia stated: "The trial court, in sustaining the special plea, found that a decision was made on April 14, 1998; that the decision 'was communicated to' the landowners, who '*had actual notice of that decision;*' and that the landowners 'did not comply with the code.' These findings are based upon credible evidence." 259 Va. at 297 (emphasis added). The Supreme Court of Virginia went on to state that the "landowners' assertion that the decision was made without their knowledge and without notice to them completely disregards the fact that they were present at the April board meeting when [the zoning administrator] announced his decision." *Id.*

In short, the Supreme Court of Virginia, in *Lilly*, clarified that Virginia Code § 15.2-2311's references to "any person aggrieved" and "recipient" of the determination included not only the owner of property subject to the determination, but also owners "in the vicinity" of the property subject to the determination. *Lilly*, also is significant because the Supreme Court of Virginia recognized that a landowner must have notice of the determination to commence the appeal period set forth in Virginia Code § 15.2-2311.

Some ten years after *Lilly*, the Circuit Court of Westmoreland County addressed the applicability of Virginia Code § 15.2-2311 in the context of notice to the landowners; *Ripol v. Westmoreland Cnty. Indus. Dev. Auth.*, 82 Va. Cir. 69 (Westmoreland Cnty. 2010), involved a challenge to a written zoning determination by landowners in the vicinity of property subject to the determination. The defendants, citing *Dick Kelly*, contended that since no one appealed the zoning determination within thirty days, it was a "thing decided" and, therefore, not subject to challenge. In analyzing the notice requirement under Virginia Code § 15.2-2311, the trial court observed that "[u]nlike the landowner in *Dick Kelly Enterprises,* the [zoning determination] was not directed to the plaintiffs in this case nor was there any evidence that any of these plaintiffs knew about the [zoning determination] until well after the time to note an appeal to the BZA had expired." In rejecting the defendants' argument that the plaintiffs' action was time barred, the trial court went on to state:

> Fundamental fairness requires that someone who is charged
> with a failure to exhaust an administrative remedy have notice

that a decision has been made that is subject to an appeal. In this Court's view, the underlying purpose of Virginia Code § 15.2-2311(A) is to provide an orderly process to allow persons "aggrieved" by a zoning administrator's decision the opportunity to have the matter reviewed by a board of zoning appeals. Furthermore, Virginia Code § 15.2-2311(A) requires that any notice of a zoning violation or the content of a written order of a zoning administrator include a statement informing the recipient of a right to appeal within 30 days and that the decision would be final if no appeal were filed.

*Ripol*, 82 Va. Cir. at 83.

Although not binding on this Court, the Westmoreland County Circuit Court's analysis of Virginia Code § 15.2-2311(A)'s notice requirements is sound and consistent with the Supreme Court of Virginia's opinion in *Lilly*.

Approximately eleven years after its decision in *Lilly*, the Supreme Court of Virginia again reviewed a trial court's ruling that a landowner's failure to exhaust his administrative remedies barred his subsequent action, namely, an inverse condemnation claim. In affirming the trial court, and in addressing the landowner's contention that he did not have proper notice of a city official's determination, the Supreme Court of Virginia stated:

> [T]he City's . . . letter constituted sufficient notice to apprise Lee of his right to be heard by way of an appeal . . . . Having failed to appeal the City's determination that the property was a nuisance, Lee acquiesced in that determination as a "thing decided."

*Lee v. City of Norfolk*, 281 Va. 423, 438, 706 S.E.2d 330 (2011) (citation omitted).

### B. *Did the Landowners Have Notice?*

The named recipient of the December 16, 2014, zoning determination was Michael Banzhaf of Reed Smith, L.L.P. The zoning determination was copied to the "Property owners of record: EVG Land, L.L.C., 13811 Foggy Hills Court, Clifton, Virginia 20124-2409." Nothing on the zoning determination indicates that it was sent by registered or certified mail. The zoning determination contains the following language: "Please be advised that any person aggrieved . . . may appeal said decision within thirty days to the Board of Zoning Appeals in strict accordance with § 15.2-2311 of the Code of Virginia. This decision is final and unappealable if not appealed within 30 days." (Tab 1.) Thus, the Court finds that the named recipients of the written zoning determination were the landowner, EVG Land, L.L.C., and its counsel; the zoning determination was addressed to EVG's counsel and copied to EVG. This does not end the Court's inquiry, however, the

Court must determine if the Landowners, or any of them, had actual notice of the zoning determination.

The record establishes, and the Court finds, that the zoning determination at issue in this case was dated December 16, 2014. The zoning determination states that "any person aggrieved . . . may appeal said decision within 30 days to the Board of Zoning Appeals in strict accordance with § 15.2-2311 of the Code of Virginia. This decision is final and unappealable if not appealed within 30 days." (*Id.*)

A further examination of the record reveals that the application for appeal filed on January 15, 2015 (APPL 2015-0001) states that the Appellant's name is "Grenata Homeowners' Association." The application further states that "Appellant is the Homeowners' Association for the Grenata Preserve Community located to the south of the subject property. Its members are the members of the public immediately and adversely affected by the glare of the field lights on the subject property." (*Id.*)

In its "Statement of Justification," Grenata states: "The appellant, Grenata Homeowners Association (the "Association"), is the property owners' association that represents the property owners of Grenata Preserve, the residential community located approximately 450 feet to the south of the Sportsplex." (*Id.*)

Grenata submitted affidavits of residents and property owners in support of the Application for Appeal (APPL 2015-0001). (*Id.*) However, no individual landowners are named as appellants in the Application (APPL 2015-0001). Affidavits from the following Landowners were attached to the application for appeal: (1) Steven Ikirt and Debbie Ikirt; (2) Eva Malhotra; and (3) Paul Norton and Kim Norton. Affidavits from other residents not named in Civil Action Nos. 95286, 95288 and 95290 were also attached, namely, John Bohane and Linda Bohane, and James Lane. (*Id.*)

The affidavits from Landowners Steven Ikirt and Debbie Ikirt, Eva Malhotra, and Paul Norton and Kim Norton were signed on January 14, 2015. Each affidavit states that the affiant has "read the Application, statement of justification, and supporting documentation." (*Id.*) The application for appeal not only specifically references the zoning determination in multiple places, but the Application attaches the zoning determination, together with the affidavits, photographs, and other related documentation. (*Id.*) The record establishes, and the Court finds, that Landowners Steven and Debbie Ikirt, Eva Malhotra, and Paul and Kim Norton had notice of the written zoning determination at least by January 14, 2015. None of the above-named Landowners thereafter filed an appeal pursuant to Virginia Code § 15.2-2311 within 30 days.

The Court cannot find in the application for appeal, nor in any other part of the record, a similar affidavit signed by Landowner Rahul Sharma. Thus, the Court cannot make the same finding of notice as to Rahul Sharma as it did as to Steven and Debbie Ikirt, Eva Malhotra, and Paul and Kim Norton.

The record does reflect, however, that Rahul Sharma attended the BZA appeal hearing on June 23, 2015, and spoke during the public comment part of the hearing in support of the appeal. (Tab 7, Transcript of BZA hearing, p. 141 ff.) Mr. Sharma said he was a resident of Grenata; he was among numerous speakers, including but not limited to Landowners Steven and Debbie Ikirt, Paul Norton, and Eva Malhotra.

It is not clear from the record whether Rahul Sharma and Raheem Sharma are the same person. The answer to this question is not material to the Court's ruling on the pleas in bar. Similarly, that Mr. Sharma attended the appeal hearing and spoke as a member of the public is not material to the Court's analysis of whether he exercised his appellate rights under Virginia Code § 15.2-2311. The sole conclusion that the Court can draw from Mr. Sharma's attendance at the June 23, 2015, BZA hearing is that he knew about the appeal hearing at some point before it started, at what point, the Court would be left to speculate. The Court cannot even conclude that Mr. Sharma had notice of the Zoning determination, nor that the Determination could be appealed within thirty days. Mr. Sharma's attendance is simply evidence that he knew about the hearing — and about the lighting issue on which he spoke — but not that he had notice of particular appellate rights, nor of the thirty-day appellate timeline, under Virginia Code § 15.2-2311. Put differently, Mr. Sharma could have learned of the BZA hearing from a family member or neighbor in sufficient time to attend the hearing and speak as a member of the public, but may have never had the specific notice of the zoning determination and right to appeal clearly contemplated in Virginia Code § 15.2-2311 and referenced by the Supreme Court of Virginia in the *Dick Kelly, Lilly,* and *Lee* cases. Even EVG's counsel, at argument on the pleas in bar, observed that some of the Landowners who appeared and participated at the BZA hearing "were never appellants before the Board of Zoning Appeals." (Transcript of March 2, 2016, hearing, pp. 20-21.)

EVG's counsel asserts that anyone who attended and participated in the BZA hearing cannot complain about lack of notice. Specifically, EVG's counsel argues "[t]hese people had notice. They not only had notice, but they appeared. And as you will see under the statute, 2311, if you have — if you appeal — if you appear, statutorily you cannot complain about not having notice. That's a complication of the *Lilly* case out of Caroline County." (Transcript of March 2, 2016 hearing, p. 20.) The clear implication of counsel's argument is that attendance at the BZA hearing cures any deficiency under Virginia Code § 15.2-2311. Counsel's argument, though, expands both the clear language of the statute and the trial court's ruling in *Lilly*.

Virginia Code § 15.2-2311(A) provides, in pertinent part:

> A decision by the board on an appeal taken pursuant to this section shall be binding upon the *owner of the property which is the subject of such appeal* only if the *owner of such property*

has been provided notice of the zoning violation or written order of the zoning administrator in accordance with this section. *The owner's* actual notice . . . or active participation in the appeal hearing shall waive *the owner's* right to challenge the validity of the board's decision due to failure of *the owner* to receive the notice of zoning violation or written order.

(Emphasis added.)

The above part of the statute, by its plain words, applies when an owner of property subject to a zoning violation does not receive notice of the violation but nonetheless appears at the BZA hearing and participates. In such case, the owner is precluded from challenging the validity of the board's decision due to lack of notice. Had the legislature intended to include the words "any person aggrieved" in this part of the statute it would have done so. Instead, the legislature chose the phrase "owner of the property which is subject of such appeal." In the present case, the owner of the property subject of the appeal is EVG, not the Landowners or Grenata. Courts cannot be concerned with the motives or wisdom of legislation. *Harrison v. Day*, 200 Va. 750, 107 S.E.2d 585 (1959). Thus, if the language of a statute is plain and unambiguous, effect must be given to it regardless of what courts think of its wisdom or policy. *Temple v. Petersburg*, 182 Va. 418, 29 S.E.2d 357 (1944); *see Carter v. Nelms*, 204 Va. 338, 131 S.E.2d 401 (1963).

Moreover, the presence and participation referenced by the Supreme Court of Virginia in *Lilly* was not presence and participation at the BZA appeal hearing; rather, it was the neighboring landowners' presence and participation at meetings in which the zoning determination was made and the right of appeal was announced. Simply put, under *Lilly*, an owner's presence and participation at a meeting when an oral zoning determination is made and the right of appeal is announced can be the basis upon which a court finds satisfactory notice under Virginia Code § 15.2-2311 to commence the 30-day appeal period. By contrast, there is no evidence in the record to establish that Mr. Sharma was present or participated in any meeting at which the zoning determination and right of appeal was announced. A matter does not become a "thing decided" until a person fails to exhaust his administrative remedy. Nothing in the record certified by the BZA establishes Mr. Sharma had notice under Virginia Code § 15.2-2311 and elected not to appeal within thirty days of receiving notice. The record only establishes that he spoke at the BZA hearing as a member of the public, which does not constitute presence and participation as specified by the legislature in Virginia Code § 15.2-2311 and as contemplated in *Lilly*.

The Landowners, in their individual capacities, save for Mr. Sharma, had notice of the zoning determination and did not file the "mandatory appeal" to the BZA, and, thus, their administrative remedy has not been exhausted, and the zoning administrator's decision has become a "thing decided" as to the Landowners (except Mr. Sharma) in their individual

capacities, not subject to court challenge. *See Lilly*, 259 Va. at 296 (citing *Dick Kelly Enter.*, 243 Va. at 378). Procedurally, at this juncture, the Court's inquiry is not a theoretical analysis of whether landowners in the Grenata community might have standing, but rather a focused inquiry as to whether the Landowners, in their individual capacities, filed a timely appeal to the board of zoning appeals after having notice of the zoning determination and their right to appeal, as required by statute. With the exception of Mr. Sharma, they did not.

## C. *Virginia Code § 15.2-2314*

Petitioners argue that, irrespective of Virginia Code § 15.2-2311, they have an independent right under Virginia Code § 15.2-2314 to file a petition for writ of certiorari. Phrased differently, Petitioners argue that, even if they had notice under Virginia Code § 15.2-2311 and elected not to appeal to the BZA, they could nonetheless exercise a right under Virginia Code § 15.2-2314 to seek certiorari review of the BZA's decision. For the reasons stated below, I disagree.

Rather than presume that the General Assembly intended to enact conflicting or irreconcilable statutory provisions, courts will construe the provisions in a way that gives full effect to all the statutory language. *See Marchand v. Division of Crime Victims' Comp.*, 230 Va. 460, 339 S.E.2d 175 (1986). Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 102 S. Ct. 1534, 71 L. Ed. 2d 748 (1982). In the present case, Virginia Code §§ 15.2-2311 and 15.2-2314 can be harmonized to give meaning to both statutes. Virginia Code § 15.2-2311 sets forth the legislature's intentions regarding appeals of zoning determinations to the BZA, while Virginia Code § 15.2-2314 addresses certiorari to review a BZA decision previously made. If Virginia Code § 15.2-2314 were read to authorize a person to petition for certiorari even if that person had prior notice of the zoning determination and elected not to first appeal to the BZA under Virginia Code § 15.2-2311, then the reference in Virginia Code § 15.2-2311 to the BZA decision becoming "final and unappealable" would have no meaning. Moreover, the Supreme Court of Virginia's holdings in *Dick Kelly, Lilly*, and *Lee*, namely that an unappealed decision is a "thing decided" not subject to judicial challenge, would be mere nullities.

The two statutes can be easily harmonized. A person aggrieved by a zoning determination who appeals that decision to the BZA under Virginia Code § 15.2-2311 and who remains aggrieved by the BZA's decision can petition for certiorari review under Virginia Code § 15.2-2314. Similarly, an aggrieved person who is not notified of a zoning determination and a corresponding right to appeal and who, therefore, is not required to appeal a zoning determination under Virginia Code § 15.2-2311 also may petition for certiorari review. Conversely, an aggrieved person who has notice and does

not exhaust the administrative remedy under Virginia Code § 15.2-2311 is precluded from further challenge under the "thing decided" doctrine.

Accordingly, respondents' pleas in bar on the issue of the Landowners' individual standing to file a petition for certiorari are granted as to Landowners Steve Ikirt, Debbie Ikirt, Paul Norton, Kim Norton, and Eva Malhotra, and the petition of the aforementioned Landowners in their individual capacities is dismissed. For the reasons previously stated, the respondents' pleas in bar as to landowner Rahul Sharma is denied.

## II. *Is Grenata a "Person Aggrieved" So As To Confer Standing To Bring This Appeal?*

As stated above, a petition for writ of certiorari to review a decision of the BZA may be filed by "[a]ny person or persons jointly or severally aggrieved" by a decision of the BZA. In *Friends of the Rappahannock v. Board of Supervisors*, the Court articulated a two-part test to determine whether a party claiming no ownership interest in the subject property has standing to challenge the land use decision.

In *Friends of the Rappahannock*, 286 Va. 38, 743 S.E.2d 132 (2013), the Friends of the Rappahannock ("Friends"), together with several local landowners appealed the order of the circuit court sustaining a demurrer and motion to dismiss their complaint challenging a special exception permit issued by the Caroline County Board of Supervisors; the permit approved the use of land adjacent to the Rappahannock River for a sand and gravel mining operation. The Friends alleged that the use of the river for product transport would interfere with and harm Friends' interests in water quality protection, preservation of the river's scenic beauty, and public education efforts in land use and resource conservation advocacy. One of the individual complainants, a lessee of property adjacent to the site of the sand and gravel mining operation, alleged that land disturbance, noise, and industrial activity at the site would frighten away the wildlife, prevent or deter new wildlife from entering the area, and render the property useless for hunting, causing him harm.

Another owner of property adjacent to the site alleged the mining activities would interfere with her right of way to the river, make it more difficult to find tenants for her home, and create problematic noise and airborne particulate conditions.

The other individual complainants lived approximately 1,500 feet away from the site in a residential development known as Hopyard Farm. Each residence in the development was separated from the river by approximately 200 feet of open space owned by the Hopyard Farm Homeowners' Association. The individual complainants alleged that the industrial activities on the site would end the scenic beauty of the location, and would increase noise, dust, and traffic from barges and commercial boats in a manner that would alter their quiet enjoyment of the area. Additionally, one

family alleged the industrial use of the site would harm their recreational use of the river, and expressed concerns regarding the long term health effects from the dust and particulate pollution from the proposed operation,

The board of supervisors and the mine's operator, Black Marsh, argued that the Friends and individual complainants lacked standing to bring the suit because, *inter alia*, they failed to show they were aggrieved parties. The Supreme Court of Virginia upheld the use of a two-step test to determine whether a party who claims no ownership interest in the subject property has standing to file a declaratory judgment action challenging the land use decision. 286 Va. at 48.

The Court stated, "[F]irst, the complainant must own or occupy 'real property within or in close proximity to the property that is the subject of' the land use determination, thus establishing that it has 'a direct, immediate, pecuniary, and substantial interest in the decision.'" *Id.* (quoting *Virginia Beach Beautification Comm'n v. Board of Zoning Appeals,* 231 Va. 415, 420, 344 S.E.2d 899 (1986)).

Second, the complainant must allege facts demonstrating a particularized harm to "'some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.'" *Id.* at 48 (quoting *Virginia Marine Res. Comm'n v. Clark,* 281 Va. 679, 687, 709 S.E.2d 150 (2011)).

In their briefs, all parties agree that the above two-part test is applicable to determine whether Crenate has standing to file its Petition. In applying this test, it is clear that Crenate owns "real property within or in close proximity to" the Sportsplex, thus establishing that it has a direct, immediate, pecuniary, and substantial interest in the decision. The record of the BZA reflects that Grenata owns three parcels that are approximately 480 feet from the Sportsplex. (*See* transcript of Public Hearing of the Loudoun County Board of Zoning Appeals conducted on June 23, 2015, at pp. 7, 13.) As set forth in Virginia Code § 15.2-2314, the findings and conclusions of the BZA on questions of fact "shall be presumed to be correct." Accordingly, Grenata satisfies the first prong of the test for an "aggrieved" person set forth in *Virginia Beach Beautification Comm'n.*

Respondents argue the Supreme Court of Virginia has treated the components of the first prong as separate and distinct, and argue that, even if Grenata owns property in close proximity, the parcels have no value and, therefore, Grenata cannot demonstrate a direct, immediate, pecuniary, and substantial interest in the decision. This reading of the case law is inapposite. The language used by the Court is clear that, "[i]n order for a petitioner to be 'aggrieved,' it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he seeks to attack." *Virginia Beach Beautification Comm'n,* 231 Va. at 419. Moreover, in *Friends of the Rappahannock,* the Court affirmed that the "complainant must own or occupy 'real property within or in close proximity to the

property that is the subject of the land use determination *thus establishing* that it has a direct, immediate, pecuniary, and substantial interest in the decision.'" 286 Va. at 48 (citing *Virginia Beach Beautification Comm'n,* 231 Va. at 420, 344 S.E.2d 899 (emphasis added). Thus, it is clear that the *ownership* of real property in close proximity to the property at issue *establishes* the direct, immediate, pecuniary, and substantial interest in the decision. The fact that the property may be worth little, or arguably nothing, is irrelevant.

With respect to the second prong of the test, Grenata has alleged facts demonstrating a particularized harm and burden to property it owns. Specifically, Grenata alleges that its property is negatively impacted by the lighting at the Sportsplex, and further alleges that the value of its property is diminished by the adverse effects of the lighting's harsh glare. (Petition for Writ of Certiorari, Par. 8.) Further, the alleged harm and burden is different from that suffered by the public generally. Put differently, the alleged glare of the lights would, at worst, only impact a limited number of properties in proximity to the Sportsplex, not the public at large. Grenata satisfies the second prong of the *Virginia Beach Beautification Comm'n* test.

Accordingly, Respondents' plea in bar with respect to Grenata's standing is denied.

### III. *Does Grenata Lack Authority To Take Legal Action on Behalf of the Landowners in a Representative Capacity?*

Article II of Grenata's Declaration of Covenants, Conditions, and Restrictions provides, in pertinent part, that "[e]very Owner of a Lot which is subject by covenants of record to assessment by the Association shall be a Member of the Association."

Article V, Subsection I, of the Declaration provides that the Association (Grenata) may, in its discretion, "employ counsel and institute and prosecute such suits as the Association may deem necessary or advisable, and to defend suits brought against the Association."

Grenata's Statement of Justification asserts it "is the property owners association that represents the property owners of Grenata Preserve . . . . The Association and its residents are the closest residential property to the Sportsplex . . . ." (*See* p. 1 of Statement of Justification; "Tab 1" of the certified record.)

At the BZA appeal hearing, counsel for Grenata argued that Virginia Code §§ 55-509 and 55-528 require that homeowner's associations represent all of the homeowners within a community or subdivision. Grenata's counsel contends that a homeowners' association is a "representative agency," and that Grenata's Board of Directors, on behalf of the association and "as the representative of its members . . . pursuant to that language in their covenant, actually adopted a resolution to engage counsel and to hire a

lighting expert to represent them in this cause." (*See* Transcript of June 23, 2015, hearing at pp. 16-17.)

The Petition for Writ of Certiorari avers that the "Covenants and Bylaws of the Association authorize the Board of Directors of the Association to employ counsel to file or defend suits to protect the interests of the homeowners and the Association. The Association was authorized by a resolution duly adopted by its Board of Directors to file APPL 2015-0001 on behalf of itself and the property owners within Grenata who were aggrieved by the decision of the zoning administrator regarding the compliance of the athletic field lighting with the Ordinance." (Petition, Par. 9.)

The resolution referenced in the BZA appeal hearing and in the petition for writ of certiorari is not a part of the record certified by the secretary of the board of zoning appeals. (*See* Transcript of March 2, 2016, argument on Pleas in Bar, p. 84.)

To sue in a representative capacity, an agent may not sue in his principal's behalf without express authority from the principal or unless authorized by statute to do so. *Braddock, L.C. v. Board Supervisors*, 268 Va. 420, 425, 601 S.E.2d 552 (2004) (citing *Fishburne v. Engledove*, 91 Va. 548, 560-61, 22 S.E. 354 (1895), and *W. S. Carnes, Inc.*, 252 Va. at 383, 478 S.E.2d 295).

As mentioned above, the resolution of Grenata's Board of Directors does not appear in the record. Indeed, there does not appear to be any evidence in the record of any express authority for Grenata to file suit on behalf of the individual Landowners. Although individual homeowners did file affidavits in support of Grenata's appeal to the BZA and these affidavits are part of the record, there is nothing contained in the affidavits that expressly authorizes Grenata to file suit on behalf of the individual homeowners.

Additionally, there is nothing in the language of the statutory sections cited by petitioners' counsel at the hearing before the BZA; *i.e.,* Virginia Code §§ 55-509 and 55-528, that expressly authorizes a community association to file suit in a representative capacity (*i.e.,* as agent) on behalf of individual homeowners (*i.e.,* as principal).

Given (i) that the petition for writ of certiorari (Par. 9) avers that Grenata "was authorized by a resolution duly adopted . . . to file APPL 2015-0001 on behalf of itself and the property owners within Grenata who were aggrieved," (ii) that the resolution is not part of the record; (iii) that Virginia Code § 15.2-2314 allows any party to introduce evidence in the court proceedings on the writ of certiorari; (iv) that the petitioner's allegations are accepted as true for purposes of ruling on the pleas in bar; and (v) that the Court is, at this stage, unable to determine whether the reference to "authorized" in the petition for writ of certiorari establishes express authorization, there is a factual issue which petitioner should have the opportunity to develop. Accordingly, the pleas in bar will be denied at this time, without prejudice for respondents to make an appropriate motion at a later date if they be so advised.

## IV. *Is the Determination That the Lighting at the Sportsplex Is in Compliance with the Applicable Zoning Ordinance a "Thing Decided" Not Subject to Court Challenge?*

Respondents contend Grenata's withdrawal of APPL 2015-0004 means that the determination that the lighting at the Sportsplex complies with the Zoning Ordinance has become final, and that this is a "thing decided" not subject to court challenge.

A review of the June 23, 2015, hearing transcript reveals, however, that Grenata withdrew only its appeal of the zoning administrator's determination of February 13, 2015, that was at issue in APPL 2015-0004. (*See* Transcript at pp. 178-83.) The February 13, 2015, determination, on which APPL 2015-0004 is based, found that the intensity of the development and uses on the subject property was not in violation of the zoning ordinance.

The December 16, 2014, determination, on which APPL 2015-0001 is based, found that the lighting of the outdoor athletic fields at the Sportsplex are in compliance with the light and glare standings of the zoning ordinance.

The Court finds that these appeals dealt with different matters, and thus, the review of matters contained in APPL 2015-0001 are properly before this Court for review. Accordingly, respondents' plea in bar on this issue is denied.